IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Foley Farms, et al., | ) |
| | ) |
| Plaintiff, | ) Case No. 16 C 50201 |
| | ) |
| vs. | ) |
| | ) |
| Barry Nowatzke, | ) Judge Philip G. Reinhard |
| | ) |
| Defendant. | ) |

**ORDER**

For the reasons stated below, defendant's motion [9] to dismiss is denied. Defendant's motion [14] to transfer venue to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1406(a) is granted.

**STATEMENT-OPINION**

Plaintiffs, Barbara Foley, Patrick Foley, and Foley Farms (a partnership owned by Barbara Foley and Patrick James Foley) bring this action against defendant Barry Nowatzke pursuant to the court's diversity jurisdiction. 28 U.S.C. § 1332(a)(1). Plaintiffs are citizens of Illinois and defendant is a citizen of Indiana. The amount in controversy exceeds $75,000. Defendant moves [9], pursuant to Fed. R. Civ. P. 12(b)(2), to dismiss for lack of personal jurisdiction and, separately [14], to transfer venue to the United States District Court for the Northern District of Indiana. The parties agree that both personal jurisdiction over the defendant and venue would be proper in the Northern District of Indiana, where defendant resides. Plaintiffs maintain both are proper here as well.

"The plaintiff bears the burden of establishing personal jurisdiction when the defendant challenges it." Northern Grain Marketing, LLC v. Greving, 743 F.3d 487, 491 (7th Cir. 2014). Where the "court rules on a defendant's motion to dismiss based on the submission of written materials without holding an evidentiary hearing, the plaintiff need only make out a prima facie case of personal jurisdiction." Id. (quotation marks and citations omitted). Factual disputes are resolved in the plaintiff's favor "when evaluating whether that showing has been made." Id.

Personal jurisdiction may be either general or specific. Id., at 492. Plaintiffs contend the court has specific personal jurisdiction over defendant. "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." Id. (quotation marks and citations omitted). "The defendant's conduct and connection with the forum state must be substantial enough to make it reasonable for the defendant to anticipate that he could be haled

1

into court there." Id. The question is "whether the defendant has deliberately engaged in significant activities within the forum state or whether it has created continuing obligations between itself and a resident of the forum." Id., at 493 (quotation marks and citations omitted).

Plaintiff Barbara Foley submits an affidavit in support of plaintiffs' position that this court has personal jurisdiction over defendant. In it, she states defendant telephoned her at her home in Illinois in October 2013 regarding an Angus show heifer known as "Amanda" to see if she was interested in purchasing a 50% interest in the animal. Amanda was coming up for sale at an auction in Oklahoma later in the month. They discussed the terms of a potential purchase and joint ownership of Amanda. They agreed, that if they were successful in purchasing Amanda, that they would split 50-50 all costs associated with Amanda and all profits associated with the sale of any offspring or output from the animal. Joint decisions would be made regarding, care, breeding, and sale of the animal, flushing, embryos, or output from the animal. Defendant would keep Amanda at his farm in Indiana and send Barbara all receipts, invoices, and documentation concerning the animal to her in Illinois and regularly communicate with her regarding the animals health, care, and welfare. Defendant called plaintiff from the auction in Oklahoma, defendant won the bid on Amanda and Barbara agreed to purchase the half interest in Amanda for $56,750. She mailed defendant a check and defendant faxed an invoice to her at her home in Illinois to memorialize the joint ownership agreement. Pursuant to industry standard and custom, an unqualified 50% ownership interest results in a partnership-like arrangement with joint decision making, shared expenses, and shared profits and ongoing regular updates from the co-owner in possession of the animal to the co-owner not in possession. Defendant would send pictures of Amanda to Barbara in Illinois when Amanda placed in a show and Barbara and defendant had multiple conversations over the phone about Amanda. Barbara was in Illinois during these calls.

Barbara's affidavit details another arrangement with defendant as well. In early 2014, defendant contacted Barbara at her home in Illinois to see if she would be interested in a 50% joint ownership arrangement for a bull known as "McKinley" that was coming up for sale. She was not interested in the bull but defendant made an alternate proposal for a portfolio arrangement in which Barbara would purchase a percentage of total ownership interest in McKinley and 11 other cattle for $100,000. Barbara told defendant she would need to discuss it with Patrick. Later, she contacted defendant and told him she and Patrick were agreeable to entering the portfolio arrangement. They each sent defendant a check for $50,000. Defendant faxed an invoice to Barbara at her home in Illinois to memorialize the portfolio arrangement. The invoice showed Barbara had purchased a 17.28% interest in the portfolio. In October 2014, defendant informed Barbara that McKinley had died. In April 2015, defendant sent an insurance check for McKinley's death to Barbara at her home in Illinois.

Barbara's affidavit states that pursuant to industry standard and custom, the portfolio arrangement included the expectation of sending invoices, bills, and share of profits to portfolio owners at their locations and portfolio owners making contribution payments to the person in possession of the cattle. Pursuant to industry standard and custom, the portfolio arrangement

2

further included the expectation of regular communication about the health and well-being of the animals in the portfolio.

"With respect to contract disputes contracting with an out-of-state party alone cannot establish automatically sufficient minimum contacts in the other party's home forum. Instead, we conduct a context-sensitive analysis of the contract, examining prior negotiations, contemplated future consequences, the terms of the contract, and the parties' course of actual dealing with each other." Id. (quotation marks and citations omitted.) "In a breach of contract case, it is only the dealings between the parties in regard to the disputed contract that are relevant to minimum contacts analysis." Felland v. Clifton, 682 F.3d 665, 674 (7th Cir. 2012) (quotation marks and citations omitted).

"Not surprisingly, given the nature of personal jurisdiction analysis, both parties were able to cite cases supporting their arguments." AS Engine Leasing, LLC v. Vision Airlines, Inc., No. 14 C 1436, 2014 WL 6461760, * 3 (N.D. Ill. Nov. 18, 2014) (Holderman, J.) In the myriad of cases addressing the subject, many factors are considered, weighed, and balanced in reaching a decision. A court sitting in Illinois looks to several factors "including (1) whether the contract was negotiated or executed in Illinois and whether it was to be performed in Illinois; (2) whether payment was to be made in Illinois; (3) whether the defendant was ever physically present in Illinois in connection with the contract; (4) whether the Illinois plaintiff or the out of state defendant initiated the transaction; (5) and the occurrence of telephone calls or other communications to and from Illinois." Id.

Taking the facts in Barbara's affidavit as true, defendant never came to Illinois in furtherance of their relationship nor were any of the animals located in Illinois. All of the cattle were kept in Indiana.[1] It is clear from Barbara's affidavit and from the allegations in the complaint that all of the activity concerning the animals which were the subject of the contracts was to occur and did occur outside Illinois. No breeding or sale of offspring was contemplated or alleged to have occurred in Illinois. No other products of the animal (flush, embryos, bull semen) were contemplated to be obtained or sold in Illinois. While plaintiff's have a cattle farm in Illinois, the farm was not expected to play, and did not play, any part in the performance of the contracts. All of the communications between Barbara and defendant were via telephone call, fax transmission, or mail while Barbara was located in Illinois and defendant was located in a different state. The parties' contractual relationship was formed after defendant initiated communication with Barbara by calling her at her home in Illinois. Under the terms of the portfolio arrangement, there was to be regular communication with defendant about the health and well-being of the animals. As to the 50/50 arrangement concerning Amanda, it was expected there would be continued and detailed communication and cooperation and joint decision making with respect to breeding and sale of embryos or offspring prior to any action

---

[1] This fact is taken from defendant's affidavit filed in support of his motion. Barbara's affidavit states that Amanda was to be kept at defendant's farm in Indiana and it does not dispute defendant's assertion that all of the cattle were kept in Indiana.

3

being taken. Barbara and defendant had multiple conversations over the phone regarding how Amanda was doing.

These facts show defendant's contacts with Illinois related to the contracts are slim. According to Barbara, defendant made the first call initiating the process leading to the arrangements. While who initiated the contact is a factor to consider it "is not dispositive to a determination of personal jurisdiction." Id. Defendant never came to Illinois. No contract was executed in Illinois. The parties reached oral agreement via phone calls during which defendant was outside Illinois and plaintiff was in Illinois. Defendant sent an invoice for each of the two arrangements from Indiana to Illinois. All of the animals were kept in Indiana. No breeding or sale of offspring was contemplated or alleged to have occurred in Illinois. No other products of the animal (flush, embryos, bull semen) were contemplated to be obtained or sold nor were any actually obtained or sold in Illinois. Barbara's affidavit states she and defendant had multiple conversations regarding how Amanda was doing. While these calls are a factor to consider, the court finds these calls concerning the welfare of one of the animals are insufficient to cast the balance in favor of personal jurisdiction. See Id. Looking at the totality of the circumstances relating to the contracts, defendant's contacts with Illinois are not sufficient to give this court personal jurisdiction over him.

Plaintiffs argue that because the complaint also alleges defendant committed conversion the necessary minimum contacts with Illinois exist under a tort theory as well. The elements of conversion under Illinois law are (1) a right to the property at issue; (2) an absolute unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property. Stevens v. Interactive Financial Advisors, Inc., 830 F.3d 735, 738 (7th Cir. 2016). However, plaintiffs' do not direct their argument to contacts related to these elements. Rather, they argue defendant made certain misrepresentations to them in Illinois which subjects him to personal jurisdiction here.

Barbara's affidavit states defendant made the following misrepresentations to her in Illinois: 1) that they would operate essentially as a partnership with respect to the joint ownership of Amanda and the portfolio sharing expenses, information, bills, profits, offspring, etc. during the lifetime of the animals; 2) that decisions regarding the animals would be made jointly including breeding and sale decisions; 3) that Barbara would be notified of placing any products from Amanda or the portfolio in a sale; 4) that defendant would send Barbara 50% and 17.28% of the interests/profits respectively from sales of flushes, embryos, semen, or other products from Amanda and the portfolio; and 5) that defendant would regularly communicate with Barbara regarding the health and status of the cattle she had an ownership interest in.

All of these asserted misrepresentations are simply restatements of what plaintiffs allege were the terms of the contracts agreed upon in her phone conversations with defendant. A "simple shift in the state-law theory that supports [their] claim," Philos Technologies, Inc. v. Philos & D, Inc., 802 F.3d 905, 916 (7th Cir. 2015), cannot make insufficient contacts with the forum state become sufficient. Id. (reading the complaint to raise a claim for conversion rather

4

than breach of contract did not change conclusion defendant lacked minimum contacts with Illinois). While "Illinois courts have stated that they may exercise personal jurisdiction over defendants in tort suits if the defendant performs an act or omission that causes injury in Illinois and the plaintiff alleges the act was tortious in nature[,] [t]his analysis, however, accounts for only the statutory authorization to exercise personal jurisdiction; any such exercise must comport with federal due process principles." Id. (quotation marks and citations omitted). "[M]ere injury to a forum resident is not a sufficient connection to the forum." Id., quoting, Walden v. Fiores, 134 S.Ct. 1115, 1125 (2014). "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way." Walden, 134 S.Ct. At 1125. As set out above, defendant did not have sufficient contact with Illinois to subject him to personal jurisdiction in Illinois for the breach of contract claim. Claiming a tort injury (from conversion or misrepresetation) based on the same contacts does not make those contacts any more significant. This court lacks personal jurisdiction over the defendant.

28 U.S.C. § 1406(a) provides that a "district court in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "The language of § 1406(a) is amply broad enough to authorize the transfer of cases, however wrong the plaintiff may have been in filing his case as to venue, whether the court in which it was filed had personal jurisdiction over the defendants or not." Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466 (1962). The court will exercise its discretion and transfer this case in the interest of justice. Defendant agrees that he is subject to personal jurisdiction in the Northern District of Indiana, where he resides, and that venue is proper there. Dismissing this case and requiring plaintiff to refile it in Indiana would be a waste of everyone's time and resources.[2]

For the foregoing reasons, defendant's motion [9] to dismiss is denied. Defendant's motion [14] to transfer venue to the United States District Court for the Northern District of Indiana pursuant to 28 U.S.C. § 1406(a) is granted.

Date: 12/13/2016                    ENTER:

*Philip G. Reinhard*

United States District Court Judge

Electronic Notices. (LC)

---

[2] This decision makes a discussion of defendant's alternative request to transfer pursuant to section 1404(a) unnecessary.